# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **Taneisha Brooks,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) Civil Action No.: |
| | ) |
| **Republic Services, Inc.,** | ) **JURY DEMANDED** |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Taneisha Brooks (hereinafter "Plaintiff"), by and through undersigned counsel, files this Complaint against Defendant Republic Services, Inc., (hereinafter "Defendant") and seeks redress for discrimination and hostile work environment suffered in her capacity as an employee of Defendant. Plaintiff has been discriminated against by Defendant on account of Plaintiff's race in violation of Title VII of the Civil Rights Act and any other causes of action that can be inferred from the facts set forth herein. In support of the Complaint, Plaintiff states as follows:

### **PARTIES**

1. Plaintiff is a resident of Jefferson County, Alabama and is over the age of nineteen (19) years.

2. Plaintiff, for all times relevant to this action, was an "employee" of Defendant as defined under Title VII of the Civil Rights Act of 1964.

3. Defendant is a foreign corporation incorporated under the laws of Delaware, with its principal place of business being in the State of Alabama. Defendant's registered agent is C T Corporation System, which can be served process at 2 North Jackson Street Ste 605, Montgomery, AL 36104.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because this arises under the laws of the United States, 42 U.S.C. § 12117(a) because the action arises under Title VII of the Civil Rights Act of 1964, as amended.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the unlawful acts took place within Jefferson County, Alabama, which lies within the Southern Division of the United States District Court for the Northern District of Alabama.

## COMPLIANCE WITH JURISDICTIONAL REQUIREMENTS

6. Plaintiff has complied with the jurisdictional requirements on to wit: that on or about January 31, 2024, Plaintiff filed a Charge of Discrimination in

employment with the Equal Employment Opportunity Commission (hereinafter "EEOC").

7.  On May 6, 2025, the EEOC issued Plaintiff a Notification of a Right to Sue, and Plaintiff filed this Complaint within the ninety (90) day deadline. A copy of the notification is attached as "Exhibit A".

## FACTS

8.  Plaintiff is an African American and a member of a protected class.

9.  On or about June 10, 2022, Plaintiff began working for Defendant.

10. Plaintiff, for all times relevant to this complaint, was the only African American employee on her team.

11. In August 2022, Plaintiff began to feel like she was being discriminated against by her manager, Kristin Barton ("Barton").

12. During Plaintiff's employment, Defendant gave preferential treatment to co-employees outside of Plaintiff's protected class.

13. On or about December 2024, Plaintiff's employment with Defendant ended.

## COUNT I
## VIOLATION OF TITLE VILL OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000E ET SEQ.
### (DISCRIMINATION BASED ON RACE – DISPARATE TREATMENT)

14. Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 – 13.

15. During Plaintiff's employment, Plaintiff was not completely trained in her position and would often have to ask Barton questions regarding her job in order to complete her job duties.

16. On or about April 11, 2023, Plaintiff asked Barton a question regarding a part of her job; instead of answering Plaintiff's question, Barton told Plaintiff that she asks "too many questions" and refused to answer the question.

17. Plaintiff's question was related directly to work, and she knew that Caucasian employees (names unknown at this time) would ask questions regarding their job and Bartin would answer them.

18. On or about June 21, 2023, Plaintiff received a corrective action from Defendant for "Job Performance" because Plaintiff was unable to assist a customer and directed the customer to someone who was able to assist with the problem. Plaintiff objected to the write up stating that she knew that she was able to assist the customer; however, Defendant disregarded the complaint.

19. Upon information and belief, Plaintiff was following the guidelines provided by Defendant and other Caucasian co-employees took identical actions and were not disciplined.

20. On or about July 12, 2023, Plaintiff received a second write-up for "Work Avoidance" due to FMLA approved absences that Plaintiff did not have "flex hours" to accompany the FMLA time.

21. During Plaintiff's FMLA, Defendant continuously reached out to Plaintiff claiming that she needed to come back earlier, regardless of her approved time out.

22. Upon information and belief, similarly situated employees outside of Plaintiff's class were not given any problems or contact in regard to FMLA and other days off.

23. On or about August 4, 2023, Plaintiff applied for a promotion, Inside Sales Consultant – Business Digital Sales Consultant, and was qualified for the position.

24. On or about August 7, 2023, Defendant rejected Plaintiff's application.

25. On or about August 14, 2023, Barton informed Plaintiff that her application for a promotion was rejected due to her job performance and FMLA absences.

26. Upon information and belief, the position Plaintiff applied for was filed with someone outside of Plaintiff's protected class.

27. Defendant's decision to reject Plaintiff's application for promotion was based on her race because Defendant did not issue disciplinary write-ups

to similarly situated employees for forwarding customers to the appropriate employee to help with problems.

28. Defendant's conduct violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., because Defendant engaged in the practice of a discrimination against Plaintiff on the basis of her race by treating them less favorable than similarly situated Caucasian employees by proving Plaintiff disciplinary write-ups for similar conduct taken by Caucasian employees, resulting in Plaintiff's failure to promote.

29. Defendant's discriminatory actions against Plaintiff violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, were intentional, and done with malice and reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States.

30. As a result of Defendant's unlawful discrimination, Plaintiffs have suffered and continue to suffer emotional distress, mental anguish, monetary damages, and other damages.

**WHEREFORE**, Plaintiff prays that this Honorable Court will:

A. Enter a declaratory judgment, declaring Defendant's past practice herein complained to be unlawful;

B. Order Defendant to institute and carry out policies, practices and programs providing equal employment opportunities for Plaintiff and

        other employees and eradicating the effects of its past and present unlawful employment practices.

C.    Order Defendant to make Plaintiff whole by providing other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices.

D.    Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, and inconvenience, in amounts to be determined at trial

E.    Award punitive damages to be determined by a jury at trial; and,

F.    Grant such further relief as the Court deems necessary and proper

## COUNT II
### VIOLATION OF TITLE VIII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000E ET SEQ.
### (DISCRIMINATION BASED ON RACE - HOSTILE WORK ENVIRONMENT)

31.    Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 – 13.

32.    Starting in or around August 2022, Plaintiff began to notice that she was being treated differently by Barton than her Caucasian co-employees.

33.    Since Plaintiff began her employment, she noticed that Barton would not take the time to properly train her and would not answer Plaintiff's

questions regarding job functions; however, Barton would provide extra help, support, and resources to Caucasian co-employees.

34. Since Plaintiff began her employment, she noticed that Barton would go out of her way to praise Caucasian employees and assist them in career advances, something she notably did not do with African American employees.

35. On or about April 11, 2023, Plaintiff asked Barton a question regarding a part of her job; instead of answering Plaintiff's question, Barton told Plaintiff that she asks "too many questions" and refused to answer the question.

36. Plaintiff's question was related directly to work, and she knew that Caucasian employees (names unknown at this time) would ask questions regarding their job and Bartin would answer them.

37. On or about June 21, 2023, Barton gave Plaintiff a corrective action for "Job Performance" because Plaintiff was unable to assist a customer and directed the customer to someone who was able to assist with the problem. Plaintiff objected and attempted to tell Barton that she was not able to assist the customer because she was not trained on the particular issue; however, Barton disregarded the complaint.

38. On or about August 4, 2023, Plaintiff applied for a promotion, Inside Sales Consultant – Business Digital Sales Consultant.

39. On or about August 7, 2023, Defendant rejected Plaintiff's application stating Barton stated that Plaintiff was not eligible.

40. On or about August 9, 2023, Plaintiff reported Barton to Defendant's Human Resources Representative, Melanie Dix, complaining that Barton was discriminating against Plaintiff due to her race.

41. Despite Plaintiff's Complaint, no action was taken to prevent future discrimination.

42. On or about August 14, 2023, Barton spoke with Plaintiff telling her that she was not eligible for a promotion due. Again, Plaintiff stated that she had not been adequately trained and was performing the duties to the best of her abilities given the lack of training and support.

43. On August 24, 2023, Plaintiff reported Barton to a higher up supervisor, Scott Hicks, to report the discrimination and requested to be moved to another team; however, no action was taken to prevent further discrimination.

44. On August 24, 2023, Plaintiff reported Barton to David Verdieu, another higher up supervisor, to report the discrimination and requested to be

moved to another team; however, no action was taken to prevent further discrimination.

45. On or about January 3, 2024, Plaintiff was in a meeting with her team and Barton to review how to handle difficult customers and de-escalate calls.

46. During the meetings, Plaintiff was instructed how she needed to remain calm and attempt to assist and de-escalate customers making racially discriminatory slurs; however, at least two Caucasian employees, Shellie Lotts and Darby (last name unknown), expressly stated that they would quit assisting rude customers and tell them to "stick it [their complaints] up their butt" or "go off on a customer" if they experienced any rudeness.

47. Barton did not discipline or correct the Caucasian employee's statements; further affirming that Barton refused to take any action to discrimination against Plaintiff based on her race.

48. Following the meeting, Plaintiff continued to receive disciplinary write-ups for performance-based infractions over her protests that she was not being properly trained to know how to perform the job duties Barton expected from Plaintiff.

49. Barton's discriminatory conduct of refusing to provide Plaintiff with the training and support needed occurred routinely until Plaintiff's employment with Defendant ended.

50. On or about October 12, 2023, Plaintiff reported Barton to David Verdue, a higher up supervisor, to report the discrimination and requested to be moved to another team; however, no action was taken to prevent further discrimination. Verdieu denied the request to move to another team.

51. On or about October 31, 2023, Barton put Plaintiff in a position to talk to a co-employee, Hall Belgium, who had notably made her uncomfortable after telling Plaintiff she would not have to interact with him. After this instance, Belgium would regularly come talk to Plaintiff despite her requesting him to stop.

52. On or about December 18, 2023, Plaintiff reported to Tereasa Hoppe, a supervisor, that a co-employee Jerry (last name unknown) had contacted her while she was on her preapproved FMLA time off to inquire about when she was coming in.

53. On or about March 2024 until December 2024, while Plaintiff was out on an approved maternity leave, Barton continuously contacted regarding when Plaintiff would be back as well as asking personal questions.

54. Plaintiff is not aware of any similarly situated Caucasian co-employee being subjected to the above treatment.

55. Accordingly, Plaintiff (an African-American) was subjected to treatment and actions that Caucasian employees were not subjected to.

56. Barton's discriminatory conduct severely impacted Plaintiff's ability to perform her job duties and was left Plaintiff humiliated by the repeated disciplinary actions she was subjected to.

57. Defendant's conduct violates Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., because Defendant engaged in the practice of a discrimination against Plaintiff on the basis of her race by knowingly allowing Plaintiff to be subject to unfair treatment and by knowingly allowing Plaintiff to be subject to racial slurs from customers.

58. Defendant's discriminatory actions against Plaintiff violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964, as amended, were intentional, and done with malice and reckless disregard for Plaintiff's rights as guaranteed under the laws of the United States.

59. As a result of Defendant's unlawful discrimination, Plaintiffs have suffered and continue to suffer emotional distress, mental anguish, monetary damages, and other damages.

**WHEREFORE**, Plaintiff prays that this Honorable Court will:

A. Enter a declaratory judgment, declaring Defendant's past practice herein complained to be unlawful;

B. Order Defendant to institute and carry out policies, practices and programs providing equal employment opportunities for Plaintiff and

        other employees and eradicating the effects of its past and present unlawful employment practices.

C.     Order Defendant to make Plaintiff whole by providing other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices.

D.     Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including, but not limited to, emotional pain, suffering, anxiety, loss of enjoyment of life, humiliation, and inconvenience, in amounts to be determined at trial

E.     Award punitive damages to be determined by a jury at trial; and,

F.     Grant such further relief as the Court deems necessary and proper

## JURY DEMAND

PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES OF THE COMPLAINT.

                                          */s/ Jon-Kaden Mullen*
                                          D. Jeremy Schatz
                                          Jon-Kaden Mullen
                                          *Attorneys for Plaintiff*

**OF COUNSEL:**
Virtus Law Group
2017 Morris Avenue, Ste 100
Birmingham, AL 35203

js@vlgal.com
jm@vlgal.com

## **<u>Please Serve Defendants By Certified Mail As Follows:</u>**

Republic Services, Inc.
c/o C T CORPORATION SYSTEM
2 NORTH JACKSON ST STE 605
MONTGOMERY, AL 36104